**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| KIMBERLY RIFE and NICOLLE KAINRATH, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | JURY DEMAND |
| SUNBEAM PRODUCTS, INC., a Delaware corporation, d/b/a Jarden Consumer Solutions, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Kimberly Rife and Nicolle Kainrath ("Plaintiffs"), on behalf of themselves and all others similarly situated, through their undersigned counsel, brings this Complaint as a class action and an individual action ("Complaint") against Defendant Sunbeam Products, Inc. d/b/a Jarden Consumer Solutions ("Sunbeam" or "Defendant") arising out of the manufacture, marketing and sale of its Crock-Pot Express Pressure Cooker. Plaintiff Rife also brings individual claims for personal injuries inflicted upon her as a result of using the product. The following allegations are based upon investigation by Plaintiffs' counsel and upon personal knowledge as to Plaintiffs' own facts.

## NATURE OF ACTION

1. This class action case is brought against a Florida headquartered company based on its defective and dangerous Crock-Pot Pressure Cookers which explode their hot contents during normal use due to design defects, and is also based on misstatements and omissions Sunbeam makes about the quality of its products and its safety features. Plaintiffs bring class

1

action claims under the Magnuson-Moss Warranty Act, Florida's breach of express and implied warranty laws, Florida's Deceptive and Unfair Trade Practices Act, Negligence, Unjust Enrichment, Strict Product Liability, and for Declaratory and Injunctive Relief.

2.     Sunbeam designs, manufactures, markets, and sells a wide range of consumer products, including the Crock-Pot brand of kitchen appliances.

3.     The Crock-Pot brand electric slow cooker was introduced to the market in 1971. The Crock-Pot slow cooker was a rapid success: sales grew from $2 million in 1971 to an astounding $93 million four years later.  The Crock-Pot brand slow cooker was so widely accepted that the brand name became virtually synonymous with electric slow cookers.  As a result, the Smithsonian Magazine has proclaimed that "the Crock Pot remains iconic, reliably nabbing spots on "Best Of" lists by *Consumer Reports*, *New York* magazine's *The Strategist* and *Good Housekeeping*." [1]

4.     In 2010, a Canadian company introduced the Instant Pot, which combined the benefits of the electric slow cooker with an electric pressure cooker function.  Like the Crock-Pot slow cooker, the Instant Pot was met with widespread market acceptance, doubling its sales every year since 2012.[2]

5.     To compete with the new Instant Pot, Defendant introduced the Crock-Pot Express Pressure Cooker (hereinafter, the "Pressure Cooker").  Defendant sought to capitalize on the history of their "iconic" and trusted slow cooker brand.  To do so, Defendant labeled and marketed their new Pressure Cooker as "TRUSTED," proclaiming "the Crock-Pot brand is a leader in one pot cooking" and "features a locking, air-tight lid that stays sealed under pressure

---

[1] https://www.smithsonianmag.com/innovation/brief-history-crock-pot-180973643/#bPqQzT9D2qct1zos.99
[2] https://www.inc.com/magazine/201706/margaret-rhodes/double-insight-instant-cooking-pot-design-awards-2017.html

for total peace-of-mind." A screenshot of the Pressure Cooker's packaging, with the above uniform representations made to consumers, appears below:



6.      Defendant emphasized the Pressure Cooker's safety features in their Owner's Guide, including that the "[a]irtight lid stays locked until pressure is released."[3]

7.      Moreover, in marketing materials delivered to retailers, such as Walmart.com (which Defendants' website claims as its partner in selling the Pressure Cookers), Defendant made similar claims:

Designed with an airtight locking lid stays sealed under pressure for added safety.[4]

8.      Despite Defendant's claimed dedication to quality manufacturing and implementing safety protection features, Defendant instead designed, manufactured, marketed, and sold online and through third-party retailers the Pressure Cooker that suffers from serious and dangerous design defects.

---

[3] *See* Crock-Pot® Express Crock Multi-Cooker Owner's Guide ("Owner's Guide") at pp. 10-11.
[4] https://www.walmart.com/ip/Crock-Pot-10-Qt-Express-Crock-Pressure-Cooker-with-Easy-Release-Steam-Dial-Stainless-Steel/901297828

9.      Specifically, during ordinary and routine operation, the Pressure Cooker generates extreme heat and steam.  When the defect manifests itself, however, the built-up pressure and steam trapped inside the Pressure Cooker causes its scalding hot contents to burst and erupt from the appliance when the lid is opened by the consumer, resulting in significant and painful personal injury to the consumer.

10.     The defect includes, without limitation, a defective pressure release valve that inaccurately indicates that the built-up pressure has escaped the appliance.  The defect also includes a faulty gasket that allows the lid to open despite the presence of significant built-up pressure, and despite a purported built-in safety feature designed to prevent the lid from opening until all the pressure is released (hereinafter, the "Defect").  Regardless of whether the Defect manifests itself, for all Pressure Cookers sold by Defendant, the Defect poses a serious safety risk to consumers and the public.

11.     The Pressure Cooker at issue includes all Crock-Pot Express Pressure Cooker models sold by Sunbeam, including without limitation, Model Number SCCPPC600-V1.

12.     At all relevant times, Defendant  knew or should have known of the Defect but nevertheless sold the Pressure Cooker to consumers, failed to warn consumers of the serious safety risk posed by the Defect and instead represented safety features would prevent the Defect from manifesting, and failed to recall the dangerously defective Pressure Cooker despite the risk of significant injuries to consumers as well as the failure of the product.

13.     As a direct and proximate result of Defendant's concealment of the Defect, failure to warn customers of the Defect, misrepresentations about its safety features, the inherent safety risk posed by the Pressure Cooker, the failure to remove the defective Pressure Cooker from the

stream of commerce, and failure to recall or remedy the Defect, Plaintiff Kainrath purchased Defendant's defective and unsafe Pressure Cooker when she otherwise would not have.

14.     Plaintiff Rife acquired a Pressure Cooker, Model Number SCCPPC600-V1, as a gift. Mrs. Rife's Pressure Cooker failed as a result of the Defect when Rife opened the lid to her Pressure Cooker, causing scalding hot contents to erupt from the appliance, and resulting in significant and painful personal injuries to her.

15.     Plaintiffs and all Class Members' Pressure Cookers contain the same Defect posing the same substantial safety risk to consumers and the public. Defendant's Pressure Cooker cannot be used safely for its intended purpose of preparing meals at home.

## PARTIES

16.     Plaintiff Kimberly Rife is a resident of Romeoville, Illinois. In approximately December 2017, Ms. Rife acquired a new Pressure Cooker (Model Number SCCPPC600-V1) as a gift from her daughter, Plaintiff Nicolle Kainrath. The Pressure Cooker was in its original unopened packaging and had not been modified in any fashion. The Package contained Defendant's instruction manual, which Rife read prior to its use and followed all instructions therein. Plaintiff Rife suffered substantial and painful injuries when her Pressure Cooker failed during normal use as a result of the Defect. Plaintiff Rife seeks to represent herself and all others who used Defendant's Pressure Cookers.

17.     Plaintiff Nicolle Kainrath, is a resident of Bolingbrook, Illinois. Class Plaintiff purchased the Pressure Cooker, (Model Number SCCPPC600-V1) in November 2017 from Best Buy and gave it to her mother, Plaintiff Kimberly Rife, as a gift. Class Plaintiff reviewed the packaging of the Pressure Cooker prior to purchase and relied upon the representations thereon in making her decision to purchase the Pressure Cooker. If Plaintiff Kainrath had known of the

Defect, she would not have purchased the Pressure Cooker.  Plaintiff Kainrath seeks to represent herself and all others who purchased Defendant's Pressure Cookers.

18.     Defendant Sunbeam Products, Inc. d/b/a Jarden Consumer Solutions ("Sunbeam" or "Defendant") is a Delaware corporation with its principal place of business located in Boca Raton, Florida.  Sunbeam designs, manufactures, markets, and sells the Pressure Cooker through third-party sellers and retailers throughout the United States.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and Plaintiffs and some Class members are citizens of states other than where Defendants are incorporated or has their primary place of business.

20.     This Court may exercise jurisdiction over Defendant because Sunbeam is headquartered in Florida and they do substantial business in this State and within this District, receive substantial revenues from their marketing, distribution, and sales of the Pressure Cooker in this District, and have engaged in the unlawful practices described in this Complaint in this District, so as to subject themselves to personal jurisdiction in this District, thus rendering the exercise of jurisdiction by this Court proper and necessary.  Defendants have continuous and systematic contacts with this District through their sale of the Pressure Cooker in Florida.

21.     Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Defendants regularly and systematically conduct business in Florida and in this judicial district, including but not limited to maintaining the principal place of business from which Defendant disseminated the misrepresentations and omissions alleged herein.

6

### PLAINTIFF RIFE'S EXPERIENCE

22.     On or about January 8, 2018, shortly after acquiring the Pressure Cooker, Mrs. Rife used it to prepare dinner for her family.  Having read and understood the instructions and having reasonably relied on Defendant's representations that the product was safe, functional, and ready for use, she cooked chicken and rice soup using the Product's soup and pressure cooker setting.  Despite following the Owner's Guide instructions, Mrs. Rife was severely injured by the Product. After the cooking process was complete, Mrs. Rife released pressure via the steam release valve and watched until the steam stopped and pressed the stop button.  Mrs. Rife also waited many minutes afterward before attempting to open the lid.

23.     Unbeknownst to her, as a result of the Defect, the Pressure Cooker still retained a significant and dangerous amount of pressure inside the appliance.  And despite Defendant's purported built-in safety features, including a lid safety device that was supposed to prevent the lid from opening while the Pressure Cooker retained pressure, Mrs. Rife was able to easily remove the lid.

24.     When she easily twisted and opened the lid, the scalding hot contents exploded out of the pot, spraying her hand, wrist and stomach, and her surrounding kitchen area.

25.     As a result, Mrs. Rife suffered first- and second-degree burns to her hand, wrist and stomach.  She was taken to an emergency room hospital and then to an urgent care center, where the burns were treated to reduce the pain and prevent infection.  Mrs. Rife endured a long period of pain and suffering because of these injuries, and still has scarring.

26.     Mrs. Rife's ability to easily open the lid when significant pressure still remained, and the presence of all signs indicating the internal pressure had been eliminated, is a dangerous defect in the Product and one that is contrary to Defendant's representations.  *See* Product

Packaging ("TRUSTED," … "the Crock-Pot brand is a leader in one pot cooking" and "features a locking, air-tight lid that stays sealed under pressure for total peace-of-mind."); *see also* Owner's Guide p. 11 ("At the end of cooking, the Lid cannot be unlocked until all the pressure is released."); *id.* p. 35 ("There is a safety feature to keep Lid from being removed while the Multi-Cooker is under pressure.").

27.     Accordingly, the Pressure Cooker failed to operate as warranted and as represented by Defendants, causing Mrs. Rife's injuries.

28.     Mrs. Rife notified Defendant of her experience, but Defendant did not provide any offers to resolve her injuries or damages, and merely sent a letter from one of its Florida offices requesting the product be returned for further investigation.

## SIMILAR EXPERIENCES OF OTHER CONSUMERS

29.     Mrs. Rife's tragic experience with Defendant's Pressure Cooker was not isolated.

30.     Other consumers reported similar horrific experiences as Mrs. Rife, including a consumer who stated his Product's "top blew off send[ing] scolding water everywhere and leaving [him] with second degree burns on [his] shoulder and neck."  Screenshots of the complaint contained on Amazon's website under the product review tab for the Pressure Cooker and a photograph of his burns appear below:[5]

---

[5] *See* https://www.amazon.com/product-reviews/B074PHL51Y/ref=acr_dpx_hist_1?ie=UTF8&filterByStar=one_star&showViewpoints=0.

## Customer Review

★☆☆☆☆ **I was provided a number for Crok Pot which was a total waste of automated reroutes**

By steve moline on January 17, 2018
Color: Stainless Steel | **Verified Purchase**

the very night I received from Amazon attempted to cook chicken breast. After cooking for 10 minutes went to release pressure value and the top blew off send scolding water everywhere and leaving me with second degree burns on my shoulder and neck. After calling Amazon 4 times, twice over seas call center. Finally after reaching someone from the US was guarantied that this was a serious nature and someone would return a call to the next business day, never happened. I was provided a number for Crok Pot which was a total waste of automated reroutes. I have read and reread owners manual, it states will not heat if cover is not on properly installed it too says cover will lock into place and not open if contents are to hot. This is my experience with this product and Amazons follow up.



251 people found this helpful

| Helpful |    ▾ 10 comments | Report abuse | Permalink

Comment

31.     Similarly, other users have posted reports of injuries and/or property damage online after the Product's failure, including on Defendant's own website[6]:

★★★★★ 1 out of 5 stars.

Brook
· 10 months ago

**Horrible blew up**

I bought this on Black Friday and have only used it twice. This last time I used it to cook a roast. About 1 hour into having the roast in the multi cooker I walked by and all of a sudden I heard a loud boom like something blew up. I saw the lid blow off the pot and roast flew all over me and my kitchen. Thankfully it was sitting under a cabinet and the lid flew back down on the pot. Had I not been for the cabinet both blocking me for the most part and stopping the lid I could have been seriously hurt. Please beware of this product!!

**Response from Crock Pot®:**

Consumer Care
· 9 months ago

Thank you for bringing this to our attention. That is definitely not the kind of experience that we want you to have. Our 6-Quart Express Crock Multi-Cooker was made with the highest quality materials and we expect them to last. We would love the opportunity to restore your faith in us. Our customer care specialist will reach out to you via email. Kindly respond directly so that we can have your issue addressed. Thank you!

---

[6] https://www.crock-pot.com/pressure-and-multi-cookers/multi-cookers/express-crock/crock-pot-6-quart-express-crock-pressure-cooker/SCCPPC600-V1.html (visited January 6, 2020).

32.     Screenshots of other consumer complaints posted on Amazon.com's website under the product review tab involving Defendant's Pressure Cooker are reproduced below:[7]



[7] These customer complaints can be found at:
https://www.amazon.com/gp/customer-reviews/RW1CR7IBLUOOU/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B074PHL51Y (visited January 6, 2020)
https://www.amazon.com/gp/customer-reviews/RE5T6RXMONLQH/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B074PHL51Y (visited January 6, 2020)
https://www.amazon.com/gp/customer-reviews/R2VO8QG0BQJHH4/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B074PHL51Y(visited January 6, 2020)
https://www.amazon.com/gp/customer-reviews/R3PRFK0I9LSN1W/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B074PHL51Y (visited January 6, 2020)



## **DEFENDANT'S MISCONDUCT**

33.     Defendant failed to adequately design, manufacture, and/or test the Pressure Cooker to ensure it was free from the Defect before offering it for sale to Plaintiffs and the Class, despite its duty to do so.

34.     The Defect poses a serious and immediate safety risk to consumers and the public and has caused or will cause Plaintiffs' and Class members' Pressure Cookers to fail during their expected useful lives.

35.     Defendant's Pressure Cooker should have been usable for its intended purpose during its expected useful life.  The Defect, however, existed at the time the Pressure Cooker was acquired by Plaintiffs and the Class, and the Defect immediately rendered the Pressure Cooker unfit for the ordinary and intended purpose for which it is marketed, sold and labeled.

36.     If the Pressure Cooker did not suffer from the Defect, Plaintiffs and the Class would not have suffered the damages set forth in this Complaint.

37.     Defendant has a duty to protect consumers by warning them that the Defect poses unreasonable risks of personal injury and/or property damage.

38.     Nonetheless, even though Defendant knew or should have known of the Defect, it chose to conceal the existence of the Defect, continued to sell the Pressure Cooker, and failed to

remove the Pressure Cooker from the marketplace.  Defendant took these actions to realize the substantial financial benefits of selling the defective Pressure Cooker to the unsuspecting public.

39.     Defendant knew or should have known that consumers including Plaintiffs and the Class: (a) were unaware of the Defect and could not reasonably be expected to discover the Defect until their Pressure Cookers failed; (b) expected to use the Pressure Cooker in their homes without putting their safety and property at risk; and (c) expected Defendant to disclose any Defect that would prevent the Pressure Cooker from safely performing its intended purpose, as such disclosure by Defendant would impact a reasonable consumer's decision whether to purchase the Pressure Cooker.

40.     As a result of Defendant's concealment of the Defect, many Class members remain unaware of the existence of the Defect, and that it poses an unreasonable risk of personal injury and/or property damage during normal use.

41.     Had Plaintiffs and Class members been made aware of the Defect, they would not have acquired and/or would have returned the product before any incident.

**DEFENDANT'S ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE DEFECT**

42.     Defendant knew or should have known when it sold the Pressure Cooker to the public that it suffered from the Defect, and that the Defect caused the Pressure Cooker to function improperly during its expected useful life, represented an unreasonable risk that the Pressure Cooker would erupt and discharge scalding hot liquids and contents, and might result in significant personal injury and/or property damage to consumers and the public.

43.     Defendant's knowledge of these facts is established through, *inter alia*, the above-identified online postings complaining that the Pressure Cooker failed during normal use, as well

as Ms. Rife's complaint to Defendant.  Despite its knowledge, Defendant did not remedy or eliminate the Defect in the Pressure Cooker or remove it from the stream of commerce.

44.     In conjunction with Defendant's experience designing and selling the Pressure Cooker, these facts illustrate that Defendant knew or should have known of the Defect.

45.     Defendant has a duty to disclose the Defect and to not conceal the Defect from Plaintiffs and Class members.  Defendant's failure to disclose, or active concealment of, the Defect places Plaintiffs and Class members at risk of personal injury and/or property damage, and caused personal injuries and damages to Mrs. Rife.

46.     Defendant is currently still selling the defective Pressure Cooker, concealing the Defect, failing to notify consumers of the Defect, and failing to recall the Pressure Cooker.

47.     Moreover, Defendant continues to falsely represent through written warranties that the Pressure Cooker is free from defects, is of merchantable quality, and will perform dependably for years.

48.     When corresponding with customers, Defendant does not disclose that the Pressure Cooker suffers from the Defect.  As a result, reasonable consumers, including Plaintiffs and Class members, purchased and used, and continue to purchase and use, the Pressure Cookers in their homes even though it is unsafe to do so.

49.     Defendant has wrongfully placed on Plaintiffs and Class members the burden, expense, and difficulty involved in discovering the Defect, repairing and replacing the Pressure Cooker, and paying for the cost of damages and injury caused by the Defect.

## COMMON FACTUAL ALLEGATIONS

50. Defendant publicly touted the Pressure Cooker to consumers as "TRUSTED,"

"dependable" and an "industry leader:"[8]

> For over 35 years, the Crock-Pot® brand has been your trusted
> brand for cooking convenience.  We strive to provide you with the
> most innovative and dependable products to make your life easier.
> The Crock-Pot® brand is a leader in one-pot cooking, and we're
> confident that Express Crock will be the perfect addition to your
> kitchen.

51. The product packaging emphasized that their Pressure Cooker is "TRUSTED"

because it "features a locking air-tight lid that stays sealed under pressure for total peace-of-

mind."

52. Defendant also made numerous other representations about the Pressure Cooker's

safety features:

> Airtight locking lid stays locked until pressure is released for
> added safety (the lid must be in the locked position when pressure
> cooking).[9]
>
> Airtight locking lid remains locked while pressure is on inside the
> unit.  The lid will only open when all the pressure has been
> released.[10]
>
> The Express Crock Multi-Cooker has been designed with safety in
> mind and has various safety measures.
> ***
> 6. Once the pressure increases, the Lid cannot be opened.  Safety
> sensors ensure the pressure remains within the set range.
> ***
> 8. At the end of cooking, the Lid cannot be unlocked until all the
> pressure is released.  This can be done using the Natural Pressure

---

[8] *See* Crock-Pot® Express Crock Multi-Cooker Recipe Book.
[9] *See* https://www.crock-pot.com/crock-pot/crock-pot-6.0-quart-express-crock-multi-cooker/SCCPPC600-V.1.html
(accessed June 30, 2018).
[10] *See* https://www.crock-pot.com/new/express-crocks/crock-pot-6-quart-express-crock-multi-cooker-black-stainless/SCCPPC600-V1-DS.html?source=igodigital (accessed January 17, 2019).

Release Method or Quick Pressure Release Method, explained on page 18.[11]

A. **Natural Pressure Release Method**: … The pressure has been released when steam is no longer escaping from the valve and the Lid opens freely with minimal force.  Only then is it safe to remove the Lid and serve food.[12]

B. **Quick Pressure Release Method:** … The pressure has been released when steam is no longer escaping from the valve and the Lid opens freely with minimal force.  Only then is it safe to remove the Lid and serve food.[13]

**TROUBLESHOOTING (CONT.)[14]**

| Subject | Question | Solution |
|---|---|---|
|  |  |  |
| Lid | I am having trouble removing the Lid. | There is a safety feature to keep the Lid from being removed while the Multi-Cooker is under pressure.  Please make sure to de-pressurize the unit by rotating the Steam Release Valve into the "Release" (open) position.  Refer to Releasing Pressure section for further instructions. |

53.     These representations are repeated on the Defendant's social media sites, including Facebook.  A screen shot of Defendant's Facebook page is reproduced below:[15]

---

[11] *See* Owner's Guide at pp. 10-11.
[12] *Id.* at p. 18.
[13] *Id.* at p. 19.
[14] *Id.* at p. 35.
[15] *See* https://www.facebook.com/Crock-Pot/videos/cook-with-confidence-crock-pot-express-crock-multi-cooker/545822079181528 (accessed January 17, 2019).



54.     Numerous retailers repeat Defendant's representations in promoting the Pressure

Cooker.  For example, in marketing materials provided to Amazon.com by Defendant with the

intent they be distributed to consumers, Defendant represented the Pressure Cookers are:[16]

> **Designed with an airtight locking lid that stays sealed under
> pressure for added safety**, a delay start timer that offers you
> flexibility to start at a later time, and Warm setting to keep your
> food at the ideal serving temperature.

---

[16] *See* https://www.amazon.com/Crock-Pot-Multi-Use-Programmable-Stainless-SCCPPC600-V1/dp/B074PHL51Y
(accessed January 17, 2019) (emphasis added).

55.     Plaintiffs and the Class acquired their Pressure Cookers reasonably believing they were properly designed and manufactured, free from defects, and safe for their intended use.

56.     Plaintiff Rife and the Class used their Pressure Cookers for their intended purpose of preparing meals at home in a manner reasonably foreseeable by Defendant.

57.     Plaintiffs and the Class, however, are unable to use their Pressure Cooker for its intended purpose, or are required to place themselves and their families at risk when using them, because the Defect renders the Pressure Cooker unsafe by allowing a dangerous level of pressure to accumulate and remain in the Product and the purported safety features rendered ineffective by allowing the lid to be easily removed, causing the hot contents to erupt out and injure the users and surrounding property.

58.     The Pressure Cooker suffers from a design Defect that poses an unreasonable risk of injury during normal use.

59.     Defendant knew or should have known of the Defect and of the serious safety risk it posed to consumers and the public, but chose to conceal knowledge of the Defect from consumers who purchased the Pressure Cooker.  Defendant continue to remain silent regarding the Defect and are continuing to sell the Pressure Cooker to unsuspecting consumers.

60.     As a result of Defendant's conduct, Plaintiffs and the Class have suffered damages, including, without limitation: (a) the purchase price of the Pressure Cooker, as Plaintiffs and the Class would not have acquired or would have returned the product had they been informed of the Defect; (b) their failure to receive the benefit of their bargain; (c) their overpayment for the Pressure Cooker; (d) the diminished value of the Pressure Cooker; (e) the costs of repair or replacement of the Pressure Cooker; and (f) damages to real and/or personal property.

61.     Plaintiff Rife used her Pressure Cooker for its intended purpose of preparing meals at home in a manner reasonably foreseeable by Defendant in accordance with the directions and warning contained in the provided instruction manual.

62.     As a direct result of Defendant's conduct which resulted in the Defect in the Pressure Cooker, Rife has suffered damages from personal injury.

## ADDITIONAL SPECIFICS CONCERNING THE DEFECT

63.     Defendant's Pressure Cooker has a design Defect that causes the product to malfunction during its expected useful life.  This section of the Complaint sets forth specifics concerning the Defect.

64.     Based upon Plaintiffs' Counsel's investigation, the Defect includes, without limitation, a faulty release valve that inaccurately indicates when the built-up pressure has safely escaped the Pressure Cooker.  The Defect is also related to a faulty gasket that allows the lid to open despite the presence of a significant and dangerous amount of built-up pressure, and despite a purported built-in safety feature designed to prevent the lid from opening until all the pressure is released.  The Defect results in excess pressure remaining in the product at the completion of a cooking cycle and causing the contents to erupt from the Pressure Cooker when it is being used for its intended purpose, discharging the scalding hot contents onto consumers, and resulting in significant injuries.  The Defect is also related to the lack of an adequate mechanism to ensure the supposed "built-in" pressure relief and safety features work.

65.     The Defect, which allows users to open the Pressure Cooker while it still contains a significant and dangerous amount of pressure, demonstrates the ineffectiveness of the lid safety device that Defendants tout as one of the Pressure Cookers' built-in safety features.

66.     The Defect manifests itself during the expected useful lives of the Pressure Cooker, within and without the warranty periods, preventing the Pressure Cooker from being used as intended, and creating an unreasonable risk of personal injury.

67.     Moreover, Defendant represents that the pressure will not build in the Product if the lid is not properly secure.[17]  Consequently, Product users were told by Defendant they were protected against improper closing of the lid and, thus, user error in this regard would not cause an adverse consequence.

## CLASS ALLEGATIONS

68.     Plaintiffs brings this action against Defendant individually and as a nationwide class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of:

> All persons in the United States who purchased or acquired a Crock Pot Express Crock Multi-Cooker (the "Nationwide Class").

69.     The Nationwide Class is collectively referred to herein as the "Class."   Excluded from the Class are Defendant; the officers, directors and employees of Defendant; any entity in which Defendant have a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of Defendant; any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

70.     <u>Numerosity.</u>  The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is presently unknown, the Class consists of thousands of people.  The exact number of Class members can be determined by Defendant's sales information and other records.

---

[17] *See* Owners Guide at p. 10 ("The Express Crock Multi-Cooker has been designed with safety in mind and has various safety measures.  1. Pressure will not build if the Lid is not shut correctly and has not sealed.").

71.     <u>Commonality.</u>  Common questions of law and fact exist as to all members of the

Class, including, without limitation:

      a.  Whether the Pressure Cooker designed and sold by Defendant possesses a material defect;

      b.  Whether the Defect creates an unreasonable risk that the Pressure Cooker will trap built-up pressure and cause the product to fail;

      c.  Whether Defendant knew or should have known that the Pressure Cooker possessed the Defect at the time of sale;

      d.  Whether Defendant fraudulently concealed the Defect;

      e.  Whether Defendant breached express warranties relating to the Pressure Cooker;

      f.  Whether Defendant breached implied warranties of merchantability relating to the Pressure Cooker;

      g.  Whether the Defect resulted from Defendant's negligence;

      h.  Whether Defendant is strictly liable for selling the Pressure Cooker;

      i.  Whether Plaintiffs and Class members are entitled to damages;

      j.  Whether Plaintiffs and Class members are entitled to replacement or repair of their defective Pressure Cooker; and

      k.  Whether Plaintiffs and Class members are entitled to equitable relief, including an injunction requiring that Defendant engage in a corrective notice campaign and/or a recall.

72.     <u>Typicality.</u>  Plaintiffs have the same interest in this matter as all Class members,

and Plaintiffs' claims arise out of the same set of facts and conduct by Defendants as the claims

of all Class members.  Plaintiffs and Class members' claims all arise out of Defendant's design

and sale of the defective Pressure Cooker that has created a significant safety risk to consumers,

and from Defendant's failure to disclose the Defect.

73.     <u>Adequacy of Representation.</u>  Plaintiffs are committed to pursuing this action and

have retained competent counsel experienced in consumer and product liability class action

litigation.  Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the Class members.

74.  <u>Injunctive/Declaratory Relief.</u>  The elements of Rule 23(b)(2) are met.  Defendant will continue to commit the unlawful practices alleged herein, and Class members will remain at an unreasonable and serious safety risk as a result of the Defect.  Defendant has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

75.  <u>Predominance.</u>  The elements of Rule 23(b)(3) are met.  The common questions of law and fact enumerated above predominate over the questions affecting only individual Class members, and a class action is the superior method for the fair and efficient adjudication of this controversy.  The likelihood that individual Class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.  Serial adjudication in numerous venues is not efficient, timely, or proper.  Judicial resources will be unnecessarily depleted by resolution of individual claims.  Joinder on an individual basis of hundreds or thousands of claimants in one suit would be impracticable or impossible.  Individualized rulings and judgments could result in inconsistent relief for similarly-situated plaintiffs.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

76.  The claims alleged herein accrued upon the discovery of the Defect which manifests itself when the Pressure Cooker fails.  Because the Defect is hidden and Defendant failed to disclose the true character, nature, and quality of the Pressure Cooker, Plaintiffs and the Class members did not discover, and could not have discovered, the Defect through reasonable and diligent investigation.  Thus, any applicable statute of limitations have been tolled by

Defendant's knowledge, misrepresentation, and/or concealment and denial of the facts as alleged herein.

77.    Plaintiffs and Class members could not have reasonably discovered the Defect before it manifests.  As a result of Defendant's active and continuing concealment of the Defect and/or failure to inform Plaintiffs and the Class of the Defect, any and all statute of limitations otherwise applicable to the allegations herein have been tolled.

## CAUSES OF ACTION

### COUNT I
**Breach of Express and Implied Warranties**
**Under the Magnuson-Moss Warranty Act**
**(On behalf of Plaintiffs and the Class)**

78.    Plaintiffs reallege and incorporates the preceding paragraphs 1 through 77 and all Exhibits attached hereto as if fully set forth in this Count.

79.    The express and implied warranties as provided by Defendant are subject to the provisions and regulations of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq*. ("MMWA").

80.    To the extent required by law, Defendant has expressly waived any basis of the bargain requirement as to Plaintiffs and Class Members by extending express and implied warranties described herein to any owner of a Pressure Cooker and not restricting these warranties solely to the buyer of the Pressure Cooker.

81.    Plaintiffs and Class Members are "consumers" as defined in the MMWA and Defendant is a "supplier" and "warrantor" as defined by the MMWA.

82.    The Pressure Cookers in question are "consumer products" as defined in the MMWA and the Pressure Cookers were manufactured and sold after July 4, 1975.  The express

warranties provided by the Defendant and/or required by statute to be provided by the Defendant are a full "written warranty" as defined in the MMWA.

83.     The Defendant made promises and representations in an express warranty provided to all consumers in the Owner's Manual, which became the basis of the bargain between Plaintiffs, Class members and the Defendant.

84.     The Defendant's written affirmations of fact, promises and/or descriptions as alleged are each a "written warranty."

85.     Affirmations of fact, promises and/or descriptions constitute a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(6).

86.     The express warranties made to the Plaintiffs and Class Members on the Pressure Cooker's packaging include: "TRUSTED," … "the Crock-Pot brand is a leader in one pot cooking" and "features a locking, air-tight lid that stays sealed under pressure for total peace-of-mind."  Similarly the express warranties made to Plaintiffs and Class Members in Defendant's Owner's Manual include the following: (a) "Sunbeam … warrants that for a period of one year from the date of purchase, this product will be free from defects in material and workmanship" (Owner's Guide at p. 1); (b) "The Express Crock Multi-Cooker has been designed with safety in mind and has various safety measures. 1. Pressure will not build if the Lid is not shut correctly and has not sealed." (*id.* at p. 10); (c) "Airtight lid stays locked until pressure is released" (*id.* at pp. 10-11); (d) "At the end of cooking, the Lid cannot be unlocked until all the pressure is released." (*id.* at p. 11); (e) "The pressure has been released when steam is no longer escaping from the valve and the Lid opens freely with minimal force.  Only then is it safe to remove the Lid and serve food. … If it does not open easily this means that the Multi-Cooker is still under pressure." (*id.* at p. 19); and (f) "There is a safety feature to keep Lid from being removed while

the Multi-Cooker is under pressure." (*id.* at p. 35).  Defendant breached these express warranties

by not providing a product which could provide the benefits described in this paragraph and, as a

result of Defendant's breach of these express warranties, Plaintiffs and Class members have been

damaged.

87.     The express warranties made to the Plaintiff Kainrath and Class Members and set

forth in the Defendant's "Limited Warranty" include that Sunbeam

> "at its option, will repair or replace this product or any component of the product
> found to be defective during the warranty period.  Replacement will be made with
> a new or remanufactured product or component.  If the product is no longer
> available, replacement may be made with a similar product of equal or greater
> value."

Owner's Manual p. 1.

88.     Through this limited warranty, Plaintiff Kainrath and Class Members are in

privity with the Defendant and/or are the express beneficiaries of the express warranties set forth

in the "Limited Warranty" and these express warranties became part of the basis of the bargain.

The Defendant breached these express warranties by not providing a product which could

provide the benefits described or be repaired, and, as a result of the Defendant's breach of these

express warranties, Plaintiffs and Class Members have been damaged.  Notwithstanding the

foregoing express warranties, Plaintiffs and the Class Members were denied the full benefit of

the bargain.

89.     By placing such products into the stream of commerce, by operation of Florida

law and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, the Defendant also

impliedly warranted to Plaintiffs and Class Members that its Pressure Cookers were of

merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for

the purpose it was made, of average worth in the marketplace, or not broken, unworkable,

contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

90.    Defendant breached all applicable warranties because the Pressure Cooker suffers from a latent and/or inherent defect that causes dangerous amounts of pressure to remain in the product and does not have a proper safety mechanism to prevent the Lid from opening while significant pressure remains, and consequently, which risks the product's hot contents spraying out and injuring consumers, which occurred with Plaintiff Rife.

91.    The latent and/or inherent defect at issue here existed when the Pressure Cooker left Defendant's possession or control in Florida, to be sold to Plaintiffs and Class Members. The latent defect was undiscoverable by Plaintiffs and the Class Members at the time of purchase or acquisition.

92.    All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiffs and others in terms of paying for the goods at issue.  The Defendants have been placed on reasonable notice of the defect in the Pressure Cooker at issue and breach of the warranties, and have had an opportunity to cure the defect for Plaintiffs and all Class Members, but have failed to do so.

93.    Defendant has breached its express and implied warranties, as the Pressure Cooker does not possess the safety properties as represented.

94.    Defendant's breach of warranty has caused Plaintiffs and Class Members to suffer injuries, paying for defective products, and entering into transactions they would not have entered into for the consideration paid.  As a direct and proximate result of the Defendant's breaches of warranty, Plaintiffs and Class Members have suffered damages and continue to

suffer damages, including economic damages in terms of the cost of a defective and unreasonably dangerous Pressure Cooker.

95.     Plaintiffs' individual MMWA claims exceeds $50,000 and are asserted on behalf of more than 100 absent class members.

96.     As a result of the breach of these warranties, Plaintiffs and Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT II
### Breach of Express Warranty
### (on behalf of Plaintiffs and the Class)

97.     Plaintiffs reallege and incorporates the preceding paragraphs 1 through 77 and all Exhibits attached hereto as if fully set forth in this Count.

98.     This claim is brought pursuant to the common law of the State of Florida because the Express Warranty provided by Defendant on the product packaging and in its Owner's Manual emanate from its principal offices located in Florida, and decision-making surrounding its Product and defects in the Product are made in Florida.

99.     In connection with its sale of the Pressure Cooker, Defendant expressly warranted that it was free from defects, made for years of dependable operation, and made from merchantable materials and workmanship.

100.     In Defendant's product packaging, Defendant represented the Pressure Cooker is "TRUSTED" and "the Crock-Pot brand is a leader in one pot cooking" and "features a locking, air-tight lid that stays sealed under pressure for total peace-of-mind." Defendant's "Owner's Guide," which accompanied the sale of the Pressure Cooker to consumers, expressly

"warrant[ed] that for a period of one year from the date of purchase, this product will be free from defects in material and workmanship." [Ex. 1 at p. 1]

101.    The Owner's Guide further provides Defendant: "will repair or replace this product or any component of the product found to be defective during the warranty period. Replacement will be made with a new or remanufactured product or component.  If the product is no longer available, replacement may be made with a similar product of equal or greater value."

102.    Furthermore, in its Owner's Guide and other promotional materials, Defendant represents that the Pressure Cooker contains built-in safety features, including a lid safety device that prevents the lid from opening until all pressure is released.[18]

103.    The Pressure Cooker is defectively designed as a whole unit and is covered by Defendant's Limited Warranty, set forth above.

104.    Each Pressure Cooker has an identical or substantially identical warranty.

105.    Plaintiff Kainrath and the Class have privity of contract with Defendant through their purchase and acquisition of the Pressure Cooker, and through the express written and implied warranties that Defendant issued to its customers.  Defendant's warranties accompanied the Pressure Cooker and were intended to benefit consumers of the Pressure Cooker.  To the extent Class members purchased the Pressure Cooker from third-party retailers, privity is not required because the Class members are intended third-party beneficiaries to the contracts between Defendant and third-party retailers.

---

[18] *See* Owner's Guide at pp. 10-11, 18-19, 35.

106.     The express written warranties covering the Pressure Cooker were a material part of the bargain between Defendant and consumers.  At the time they made these express warranties, Defendant knew of the purpose for which the Pressure Cooker was to be used.

107.     Defendant breached its express warranties by selling the Pressure Cooker that was, in actuality, not free of defects, not made for years of dependable operation, not made from merchantable material and workmanship, and could not be used for the ordinary purpose of preparing meals at home without the risk of the defect manifesting itself.   Defendant breached their express written warranties to Plaintiff Kainrath and the Class members in that the Pressure Cooker contains the Defect on the very first day of purchase, creating a serious safety risk to Plaintiff Kainrath and Class members.

108.     The Pressure Cookers that Plaintiff Kainrath purchased was subject to the Defect and caused significant personal injury to Plaintiff Rife.

109.     Defendant expressly warranted in writing that they would repair or replace any defect in the Pressure Cooker, or refund the purchase price of the Pressure Cooker if repair or replacement is not feasible.

110.     Plaintiff Rife notified Defendant of their breach of the express warranty shortly after Plaintiff Rife's Pressure Cooker failed to perform as warranted as a result of the Defect. Defendant ignored her complaint and refused to compensate for her loss and injuries, and instead merely requested she return the Unit.  Plaintiffs subsequently notified Defendant again of their breach and again Defendant ignored their complaints.

111.     Defendant breached their express warranty to repair or replace the defective Pressure Cooker when they failed to do so despite their knowledge of the Defect, and/or their

knowledge of alternative designs, materials, and/or options for manufacturing the Pressure Cooker.

112.    To the extent that Defendant has repaired or replaced the defective parts for some Class members, the warranty of repair or replacement fails in its essential purpose because it is insufficient to make Plaintiffs and Class members whole and/or because Defendant has failed to provide the promised remedy within a reasonable time.

113.    Also, many of the damages resulting from the defective Pressure Cooker cannot be resolved through the limited remedy of repair or replacement, as incidental and consequential damages have already been suffered due to Defendant's conduct as alleged herein.

114.    Accordingly, recovery by Plaintiffs and Class members is not limited to the limited warranty of repair and replacement, and they seek all remedies allowed by law.

115.    Upon information and belief, Defendant received further notice and has been on notice of the Defect and of their breaches of express and implied warranties through customer warranty claims reporting problems with the Pressure Cooker, customer complaints, and their own internal and external testing.  Defendant also received such notice through Plaintiffs who complained to Defendant about the defective Pressure Cooker, as described above.

116.    Despite having notice and knowledge of the Defect, Defendant failed to provide Defect-free Pressure Cookers to Plaintiffs and Class members, failed to provide free repairs of the defective Pressure Cooker, and failed to provide any form of compensation for the damages resulting from the Defect.

117.    As a result of Defendant's breach of their express written warranties, Plaintiff Kainrath and Class members have suffered damages.

118.    Plaintiffs, on behalf of themselves and the Class, demand judgment against the Defendant for compensatory damages for themselves and each member of the Class, for the establishment of a common fund, plus attorneys' fees, interest and costs.

## COUNT III
### Breach of Implied Warranty of Merchantability
### (On behalf of Plaintiffs and the Class)

119.    Class Plaintiffs reallege and incorporates the preceding paragraphs 1 through 77 and all the Exhibits attached hereto as if fully set forth in this Count.

120.    This claim is brought pursuant to the common law of the State of Florida because the warranty provided by Defendant on the product packaging and in its Owner's Manual emanate from its principal offices located in Florida, and decision-making surrounding its Product and defects in the Product are made in Florida.

121.    The Pressure Cooker purchased by Plaintiff Kainrath and Class members was defectively designed and manufactured and posed a serious and immediate safety risk to consumers and the public.

122.    All of the Pressure Cookers sold by Defendants left Defendants' facilities and control with a Defect caused by a defective design incorporated into the manufacture of the Pressure Cookers.

123.    The Defect placed and/or places Plaintiffs and Class members at a serious safety and property damage risk upon using the Pressure Cooker in their homes.

124.    The law imposes a duty requiring manufacturers or sellers of a product to ensure that the product is merchantable and reasonably fit for the ordinary purposes for which such a product is used, and that the product is acceptable in trade for the product description.  This

implied warranty of merchantability is part of the basis of the bargain between Defendants and consumers, including Plaintiffs and the Class members.

125.    Notwithstanding the aforementioned duty, at the time of delivery, Defendants breached the implied warranty of merchantability in that the Pressure Cooker is defective and poses a serious safety risk, was not fit for the ordinary purposes for which it was used, would not pass without objection, and failed to conform to the standard performance of like products.

126.    Defendants knew, or should have known, that the Pressure Cooker posed a safety risk and was defective, and that it breached the implied warranties at the time they sold the Pressure Cooker to Plaintiff Kainrath and Class members or otherwise placed them into the stream of commerce and were acquired by Plaintiffs and the Class.

127.    Plaintiff Kainrath and Class members have privity of contract with Defendants through their purchase of the Pressure Cooker from Defendants, and through the express written and implied warranties Defendants issued to its customers.  Defendants' warranties accompanied the Pressure Cooker and were intended to benefit the ultimate consumers.

128.     Plaintiff Rife and Class members without privity are also entitled to the implied warranties set forth herein.

129.    As a direct and proximate result of Defendants' breach of the implied warranties, Plaintiffs Kainrath and Rife, and Class members purchased or acquired unsafe Pressure Cookers that were not fit to be used for their intended purpose of preparing food in a residential setting.

130.    Plaintiffs notified Defendants of their breach of the implied warranties shortly after their Pressure Cookers failed to perform as warranted as a result of the Defect.

131.    Defendants received further notice of the Defect and of its breaches of express and implied warranties through customer warranty claims reporting problems with the Pressure Cooker, customer complaints, and their own internal and external testing.

132.    Despite having notice and knowledge of the Defect, Defendants failed to provide Defect-free Pressure Cookers to Plaintiffs and Class members, failed to provide free repairs of the defective Pressure Cooker, and failed to provide any form of compensation for the damages resulting from the Defect.

133.    As a direct and proximate result of Defendants' breach of implied warranties, Plaintiffs and Class members have suffered damages and injuries.

134.    Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendant for compensatory damages, establishment of a common fund, plus attorneys' fees, costs and interest.

## COUNT IV
### Negligence
### (On behalf of Plaintiffs and the Class)

135.    Plaintiffs reallege and incorporate the preceding paragraphs 1 through 77 and all the Exhibits attached hereto as if fully set forth in this Count.

136.    This claim is brought pursuant to the common law of the State of Florida because the representations by Defendant on the product packaging and in its Owner's Manual emanate from its principal offices located in Florida, and decision-making surrounding its Product and defects in the Product are made in Florida.

137.    Defendants owed a duty to Plaintiffs and Class members to design, manufacture, produce, test, inspect, market, distribute, and sell the Pressure Cooker with reasonable care and in a workmanlike fashion, and also had a duty to protect Plaintiffs and Class members from

foreseeable and unreasonable risks of harm.  Defendants breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting, and selling the Pressure Cookers.

138.    Defendants also acted unreasonably in failing to provide appropriate and adequate warnings and instructions, and the failure to provide adequate warnings and instructions was a proximate cause of the harm for which damages are sought.

139.    In addition, at the time the Pressure Cookers left Defendants' control without an adequate warning or instruction, they constituted unreasonably dangerous articles that Defendants knew, or in the existence of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable consumer.  Defendants knew or should have known that the Pressure Cooker they designed, manufactured, produced, tested, inspected, marketed, distributed, and/or sold would, during ordinary and foreseeable use, create an unreasonable safety risk and fail to perform as intended.

140.    At the time of the design or manufacture of the Pressure Cooker, Defendants acted unreasonably in designing or manufacturing them, and this conduct proximately caused the harm for which damages are sought.

141.    Further, at the time the Pressure Cookers left the control of Defendants, it unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design that could have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the Pressure Cooker.  At the time the Pressure Cookers left the control of Defendants, their design was so unreasonable that no reasonable person, aware of the relevant facts, would use or purchase them.

142.    Defendants knew or should have known that the Pressure Cooker created an unreasonable safety risk as a result of the Defect, and that the Defect could cause personal injury and/or property damage.

143.    Based on their knowledge, Defendants had a duty to disclose to Plaintiffs and Class members the serious safety risks posed by the Pressure Cooker, in addition to a duty to disclose the nature of the Defect.

144.    Defendants had a further duty not to put the defective products on the market, had a continuing duty to remove their unsafe Pressure Cooker from the market, and also had a duty to seek a recall from consumers.

145.    Defendants failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the Pressure Cooker by, among other things, failing to design and manufacture the Pressure Cooker in a manner to ensure that, under normal and intended usage, a serious safety risk such as the one posed by the Defect did not occur.

146.    Defendants failed to exercise reasonable care in failing to warn or to warn adequately and sufficiently, either directly or indirectly, of the Defect.

147.    Defendants failed to exercise reasonable care when they knew of the safety risks the Defect posed and actively concealed those risks from Plaintiff and Class members.

148.    Defendants failed to exercise reasonable care when it knew of the safety risks posed by the Defect and failed to replace, repair, or recall Pressure Cookers they knew or should have known were unsafe and defective.

149.    As a direct and proximate result of Defendants' negligence, Plaintiffs and Class members bought or acquired the Pressure Cooker without knowledge of the Defect or of the

serious safety risk, and purchased or acquired an unsafe product that could not be used for its intended purpose.

150.    As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class members have suffered damages.

151.    Mrs. Rife likewise suffered personal injuries as a direct and proximate result of the Defect while using her Pressure Cooker in the manner and for the purpose for which it was designed, manufactured and marketed.  Mrs. Rife seeks damages for her personal injury as a separate non-class claim set forth below.

<u>**COUNT V**</u>
**Unjust Enrichment**
**(On behalf of Plaintiffs and the Class)**

152.    Plaintiffs reallege and incorporate the preceding paragraphs 1 through 77 and all the Exhibits attached hereto as if fully set forth in this Count.

153.    This claim is brought pursuant to the common law of the State of Florida because the representations by Defendant on the product packaging and in its Owner's Manual emanate from its principal offices located in Florida, and decision-making surrounding its Product and defects in the Product are made in Florida.

154.    This alternative claim is asserted on behalf of Plaintiff Kainrath and Class members to the extent there is any determination that any contracts between Class members and Defendants do not govern the subject matter of the disputes with Defendants, or that Plaintiffs do not have standing to assert contractual claims against Defendants.

155.    Plaintiff Kainrath and Class members conferred a benefit on Defendants, and Defendants had knowledge of this benefit.  By their wrongful acts and omissions described

herein, including selling the defective Pressure Cooker, Defendants were unjustly enriched at the expense of Plaintiff Kainrath and Class members.

156.    Plaintiff Kainrath and Class members' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

157.    It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Pressure Cooker.

158.    Plaintiff Kainrath and Class members seek restitution from Defendants and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct, and establishing a constructive trust from which Plaintiff Kainrath and Class members may seek restitution.

## COUNT VI
### Strict Product Liability – Manufacturing and Design Defect and Failure to Warn
### (On behalf of Plaintiffs and the Class)

159.    Plaintiffs reallege and incorporate the preceding paragraphs 1 through 77 and all Exhibits attached hereto as if fully set forth in this Count.

160.    This claim is brought pursuant to the common law of the State of Florida because the representations by Defendant on the product packaging and in its Owner's Manual emanate from its principal offices located in Florida, and decision-making surrounding its Product and defects in the Product are made in Florida.

161.    Defendants designed, developed, tested, manufactured, distributed, marketed, and/or sold the Pressure Cooker to Plaintiffs and the Class.

162.    The Pressure Cookers were defective in their manufacture and design, and contained the Defect when they left Defendants' control.

163.    Defendants could have implemented or adopted reasonable and feasible alternative designs, materials, and/or manufacturing methods to remedy the Defect but failed to do so.

164.    The risk of harm associated with the Pressure Cooker outweighs its intended and foreseeable benefit.  The ability to quickly prepare meals at home does not outweigh the risk of the Pressure Cooker erupting and inflicting significant personal injury.

165.    Defendants' Pressure Cooker reached Plaintiffs and Class members in the same condition as when it left Defendants' control.

166.    Defendants knew or should have known that the Pressure Cookers were defective and posed a real risk of trapping built-up pressure and erupting during their regular use.

167.    The Pressure Cooker was more dangerous than a reasonably prudent consumer would expect when used in an intended and reasonably foreseeable manner.

168.    Plaintiffs and the Class members were unaware of the risk of harm posed by the Pressure Cooker.

169.    Defendants failed to inform Plaintiffs and Class members as to the Pressure Cooker's susceptibility to erupt, causing scalding hot contents to discharge, resulting in significant personal injury and/or property damage.

170.    Defendants failed to provide a warning that a reasonable manufacturer would have provided in light of the likelihood that the Pressure Cooker would erupt and in light of the serious harm that may result from the Defect.

171.    The Pressure Cooker was defective due to inadequate warnings, inadequate inspection and testing, and/or inadequate reporting concerning the results of quality control testing, or lack thereof.

172.    Had Plaintiffs and Class members been adequately warned concerning the likelihood that the Pressure Cooker would erupt, they would have taken steps to avoid damages by not purchasing or acquiring them, or could have taken further precautions in using them.

173.    Upon learning that their Pressure Cooker could trap built-up pressure and erupt, Defendants had a duty to warn consumers of the possibility that the Defect could cause severe injury to persons and/or property, even when used for their intended purpose.

174.    Defendants, instead, falsely represented that the Pressure Cooker contained safety features to prevent pressure from building in the product.

175.    As a direct and proximate result of the defective condition of the Pressure Cooker, Plaintiffs and Class members have incurred or are at risk of incurring damages to their persons and to their personal and/or real property in an amount to be determined at trial.

176.    Mrs. Rife likewise suffered personal injuries as a direct and proximate result of the Defect while using her Pressure Cooker in the manner and for the purpose for which it was designed, manufactured and marketed.  Mrs. Rife seeks damages for her personal injury as a separate non-class claim set forth below.

### COUNT VII
### Deceptive and Unfair Trade Practices Act
### (On behalf of Plaintiffs and the Class)

177.    Plaintiff realleges and incorporates the preceding paragraphs 1 through 77 and all Exhibits attached hereto as if fully set forth in this Count.

178.    This claim is brought pursuant to Florida law because the representations by Defendant on the product packaging and in its Owner's Manual emanate from its principal offices located in Florida, and decision-making surrounding its Product and defects in the Product are made in Florida.

179.     The stated purpose of the Florida Deceptive and Unfair Trade Practices Act, Fla.
Stat. §§ 501.201 *et seq.* (the "Act" or "FDUTPA") is to "protect the consuming public … from
those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts
or practices in the conduct of any trade or commerce."  Fla. Stat. §501.202(2).

180.     Plaintiffs and all Class Members are "consumers" and the transactions at issue in
this Complaint constitute "trade or commerce" as defined by Fla. Stat. §§501.203(7) and (8),
respectively.  Florida Statute §501.204(1) declares unlawful "[u]nfair methods of competition,
unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any
trade or commerce."

181.     Consumers and the consuming public under the FDUTPA include Florida
residents and non-residents of Florida, as Florida has a strong interest in regulating the conduct
of corporations headquartered within the state. There are no geographical or residential
restrictions contained within the express language of the FDUTPA and the Act applies to
Defendant regardless of where the distribution and/or sale of Pressure Cookers occurred.

182.     In violation of the FDUTPA, the Defendant employed deception, false promise,
misrepresentation and the knowing concealment, suppression, or omission of material facts in
their distribution, sale, marketing, and/or advertisement of the Pressure Cookers, including
information on its Product packaging and in the Owner's Manuals, on the website of the
Defendant, and the material facts as set forth in the following paragraphs.  The actions occurred,
at least in part, at or from the Defendant's principal offices in Boca Raton, Florida.

183.     Prior to and at the time the Defendant distributed the Pressure Cookers from their
headquarters in Florida for sale to the public they engaged in deception, false promises,
misrepresentations, concealment, suppression, or omission of material facts in violation of the

FDUTPA in the following ways: (a) representing in its Product packaging that its Pressure Cooker is "TRUSTED" and "the Crock-Pot brand is a leader in one pot cooking" and "features a locking, air-tight lid that stays sealed under pressure for total peace-of-mind;" (b) representing in its Owner's Manual that "Sunbeam … warrants that for a period of one year from the date of purchase, this product will be free from defects in material and workmanship" (Owner's Guide at p. 1); (c) representing that the "Express Crock Multi-Cooker has been designed with safety in mind and has various safety measures. 1. Pressure will not build if the Lid is not shut correctly and has not sealed." (*id.* at p. 10); (d) representing that the "Airtight lid stays locked until pressure is released" (*id.* at pp. 10-11); (e) representing that "At the end of cooking, the Lid cannot be unlocked until all the pressure is released." (*id.* at p. 11); (f) representing that "The pressure has been released when steam is no longer escaping from the valve and the Lid opens freely with minimal force.  Only then is it safe to remove the Lid and serve food. … If it does not open easily this means that the Multi-Cooker is still under pressure." (*id.* at p. 19); (g) representing that "There is a safety feature to keep Lid from being removed while the Multi-Cooker is under pressure." (*id.* at p. 35); and (h) omitting a warning that pressure can remain in the Pressure Cooker and the Lid's safety lock mechanism may not work, resulting in a dangerous condition if the consumer if the consumer lifts the Lid.   *See* Exhibit 1, Defendant's Owner's Manual.  These misrepresentations originated, at least in part, from the Defendant's headquarters in Florida.

184.    The misrepresentations, deception, false promises, knowing concealment, suppression, omission of material facts in their distribution, sale, marketing, and/or advertisement of the Pressure Cookers, including information on the Product packaging and in the owner's manual and on the website of the Defendant were uniform as to Plaintiffs and each

class member and the decisions involving misrepresentations, deception, false promises, knowing concealment, suppression, and omission of material facts were made by Defendants in Florida.

185.    The Defendant violated the FDUPTA by failing to disclose to and concealing from Plaintiffs, Class Members, prospective purchasers, and the public the defects in the Pressure Cookers.

186.    These misrepresentations, practices, and omissions of the material facts are likely to deceive a consumer acting reasonably in the same circumstances, and Plaintiffs and Class Members need not prove individual reliance. Since proof of reliance is not necessary, issues relating to causation and damages will be common to Plaintiffs and all Class Members.

187.    The Defendants' concealment, suppression, or omission of material facts as alleged herein constitutes unfair, deceptive and fraudulent business practices within the meaning of the FDUTPA.

188.    The Defendant either knew, or should have known, that the Pressure Cookers are defectively designed and/or manufactured and are not safe against accidental discharge and that serious injury could occur when a Pressure Cooker is used for its normal, intended purpose.  All of the Defendant's unfair or deceptive acts relate to their involvement in placing the Pressure Cookers into the stream of commerce from their headquarters in Florida, knowing the Pressure Cookers were not safe and that serious injury or death could occur because of the defects.

189.    Upon information and belief, the Defendant knew or should have known that, at the time the Pressure Cookers left the Defendant's control, the Pressure Cookers contained the Safety Defect described herein. At the time of manufacture, distribution, and/or sale, the Pressure Cookers contained the common design defects. The defects reduced the effectiveness and

performance of the Pressure Cookers and rendered them unable to perform the ordinary purposes for which they were used as well as caused the resulting damage described herein.

190.    As a direct and proximate cause of the violation of the FDUTPA, described herein, Plaintiffs and Class Members have been injured in that they own and/or use Pressure Cookers with the defects based on misrepresentations and nondisclosure of the material facts alleged herein, including but not limited to, nondisclosure of the defects.  Furthermore, Plaintiffs and Class Members are damaged because they did not receive a Pressure Cooker with the characteristics, features, and capabilities as represented by the Defendant.  The Pressure Cookers that were delivered to the Plaintiffs and Class Members have a lower market value than they would have had if the Defendants had delivered Pressure Cookers that were not defective and had effective internal safety features.  Plaintiffs have suffered actual damages equal to the economic difference in value between the Pressure Cooker as received and as should have been received ("benefit of the bargain damages").

191.    The Defendant's unlawful conduct is continuing, with no indication that the Defendant's unlawful conduct will cease.

192.    Said acts and practices on the part of the Defendant were and are illegal and unlawful pursuant to Florida Statute § 501.204.

193.    As a direct result and proximate result of the Defendant's violations of the FDUTPA, Plaintiffs and Class Members have suffered damages, regardless of whether the Pressure Cookers have malfunctioned or manifested the defects in some way.  Plaintiffs and the Class Members are entitled to actual damages, including benefit of the bargain damages. Further, Plaintiffs and Class Members are entitled to equitable and declaratory relief, damages

allowed under FDUTPA, costs, the establishment of a common fund if necessary, and statutory attorney fees.

194.    **Alternatively**, in the event Florida's FDUTPA law does not apply, Illinois' Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, applies.

195.    At all relevant times, there was in full force and effect the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*

196.    The ICFA prohibits deceptive and unfair conduct in connection with any trade or commerce involving merchandise and services.

197.    Section 2 of the ICFA provides in pertinent part:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act, approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.  In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2.

198.    Plaintiff Kainrath and members of the Class are consumers, and the deception at issue in this case occurred in the course of conduct involving trade or commerce.

199.    Plaintiff Kainrath and members of the Class were deceived by Defendants' business practices related to its sale of the Pressure Cooker.  Defendants represented that the Pressure Cookers would safely operate for the intended purpose of cooking food and that safety mechanisms were installed in the Product to prevent pressure from causing the contents to spray out of the unit.  Defendants did not warn Plaintiff Kainrath or Class members that the safety mechanism could fail, the lid could easily open with pressure still retained in the unit, or that the

contents could spray out of the unit after easy opening of the lid.

200.    Defendants intended Plaintiff Kainrath and members of the Class to rely on Defendants' representations and omissions of material fact surrounding the purported safety and other features of the Product.

201.    Defendants' representations and omissions of material fact caused Plaintiffs and Class members damages.

202.    Additionally, Defendant's improper conduct surrounding the Product is unfair because (1) it offends public policy as it has been established by statute; (2) is immoral, unethical, oppressive or unscrupulous; and (3) causes substantial injury.

203.    By marketing, selling and distributing to consumers a defective Product like the Pressure Cooker, misstating the Product's safety features, and omitting warnings of its dangers, Defendants' conduct offends public policy as set by statute.

204.    Defendants' conduct also is immoral, unethical, oppressive and unscrupulous.

205.    And by selling its defective product to consumers, Defendant caused substantial injury to Plaintiffs and Class members that is redressable under Illinois' Consumer Fraud Act.

## COUNT VIII
### Injunctive and Declaratory Relief
### (On behalf of Plaintiffs and the Class)

206.    Plaintiffs reallege and incorporate the preceding paragraphs 1 through 77 and all Exhibits attached hereto as if fully set forth in this Count.

207.    There is an actual controversy between Defendant, Plaintiffs and Class members concerning the existence of the Defect in the Pressure Cooker.

208.     Pursuant to 28 U.S.C. §2201, this Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

209.     Accordingly, Plaintiffs and Class members seek a declaration that the Pressure Cooker has a common Defect in its design and/or manufacture.

210.     Additionally, Plaintiffs and Class members seek a declaration that this common Defect poses a serious safety risk to consumers and the public.

211.     Defendant designed, manufactured, produced, tested, inspected, marketed, distributed, and sold the Pressure Cooker which contains a material and dangerous Defect as described herein, and continues to do so.

212.     Based upon information and belief, Defendant has taken no corrective action concerning the Defect, and has not issued any warnings or notices concerning the dangerous Defect, nor implemented a product recall.

213.     Plaintiffs and Class members have suffered actual damage or injury or are in immediate risk of suffering actual damage or injury due to the Defect.  Defendant should be required to take corrective action to prevent further injuries, including: (a) issuing a nationwide recall of the Pressure Cooker; (b) issuing warnings and/or notices to consumers and the Class concerning the Defect; and (c) immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective Pressure Cooker.

**COUNT IX**
**(Personal Injury on behalf of Plaintiff Rife)**

214.     Rife realleges and incorporates the preceding paragraphs 1 through 77 and all Exhibits attached hereto as if fully set forth herein.

215.    Pursuant to Florida and Illinois common and statutory law, as the designer, manufacturer and seller of the Pressure Cooker, Defendant owed duties to Plaintiff Rife to exercise ordinary care in designing, manufacturing and selling its Pressure Cookers.

216.    Defendant is also strictly liable for the injuries and damages suffered by Mrs. Rife.

217.    Defendant was negligent in the design, manufacture and/or sale of the Pressure Cooker, as set forth herein.

218.    As a direct and proximate cause of the Defendant's negligence, deceptive conduct and breach of warranty as set forth herein, Mrs. Rife sustained personal injuries with resultant damages and losses including past and future medical expenses, past and future lost wages and earnings, past and future pain and suffering, disfigurement, anxiety and loss of enjoyment of life.

219.    Plaintiff Rife proposes to stay her individual personal injury claim until after the class claims have been adjudicated.

## **JURY DEMAND**

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for the following judgment:

A.    An Order certifying this action as a class action on behalf of the Nationwide Class;

B.    An Order appointing Plaintiffs as the Class Representatives, and appointing the undersigned counsel as Class Counsel;

C.    A Declaration that the Pressure Cooker is defective;

D.      An Order awarding injunctive relief by requiring Defendants, at their own

expense, to issue corrective actions, including notification, recall, inspection, and, as necessary,

repair and replacement of the Pressure Cooker;

E.      Payment to Plaintiffs and Class members of all damages associated with or caused

by the defective Pressure Cooker, in an amount to be proven at trial;

F.      An award of attorneys' fees and costs, as provided by law and/or as would be

reasonable from any recovery of monies recovered for or benefits bestowed on the Class;

G.      Interest as provided by law, including but not limited to pre-judgment and post-

judgment interest as provided by rule or statute; and

H.      Such other and further relief as this Court may deem just, equitable, or proper.

Respectfully submitted this 7th day of January, 2020.

**VARNELL & WARWICK, P.A.**

By: s/ Brian W. Warwick_____
BRIAN W. WARWICK, FBN: 0605573
JANET R. VARNELL, FBN 0605573
P.O. Box 1870
Lady Lake, Florida 32158
Telephone: (352) 753-8600
Facsimile:  (352) 504-3301
bwarwick@varnellandwarwick.com
jvarnell@varnellandwarwick.com
kstroly@varnellandwarwick.com

Michael R. Karnuth
**Law Offices of Michael R. Karnuth**
55 East Monroe St., Suite 3800
Chicago, Illinois 60603
Tel.: (312) 391-0203
mike@karnuthlaw.com

Antonio Vozzolo
**Vozzolo Law LLC**
345 Route 17 South

Upper Saddle River, N.J. 07458
Tel: 201-630-8820
avozzolo@vozzolo.com

***Attorneys for Plaintiffs***